STATE of South Dakota, Plaintiff and Respondent,

v.

Huie E. KRANA, Defendant and Appellant.

No. 12199.

Supreme Court of South Dakota.

Argued May 12, 1978.

Decided Nov. 30, 1978.

John P. Guhin, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Joseph M. Butler and Michael M. Hickey of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellant.

RAMYNKE, Circuit Judge.

On April 30, 1973, defendant made a delivery of corn to the Fall River Feed Lot near Hot Springs, South Dakota. Shortly thereafter, employees of the feedlot found a magnet on the scale used to weigh the trucks before and after deliveries were made. The magnet was taken off, shown to the sheriff and marked by him, and then put back on the scale. The scale was rebalanced, and it was determined that if there were no rebalancing that load of feed would register 6,265 pounds more than it weighed. It was also determined that if the magnet were then removed during the reweighing of the empty truck another 6,265 pounds would be added to the weight of the grain sold.

On May 9, 1973, defendant made another delivery of corn to the feed lot with six trucks. During the weighing operation an

eyewitness observed defendant remove the magnet from the scale with his right hand. Shortly thereafter, he walked to a darkened portion of the feed lot, and later the magnet was found sticking to a fence exactly where defendant had stood.

A second part of this scheme took place when, under defendant's direction, the driver of the first of the series of trucks drove as far as he could onto the scale. The driver of the following truck then drove his front wheels onto the scale, so that although only one truck was supposedly being weighed there was actually a truck and a half on the scale. This system was followed with each of the six trucks, resulting in a double weighing of the loads.

In addition to these two schemes, on the night of May 9th one of the trucks was maneuvered around so that it actually drove on the scales twice in order to be weighed and sold each time as another load of corn. As a result, there were seven tickets made out to defendant that night, but he had only six trucks actually delivering corn.

Defendant was tried on a charge of conspiracy to obtain money under false pretenses. The trial commenced on August 23, 1976, and a verdict of guilty was rendered against defendant by the jury. A supplemental information charging defendant as a habitual offender was filed on August 23, 1976. A motion for change of venue was granted to defendant and a trial on this second information took place on December 9, 1976, in Beadle County. The jury returned a verdict of guilty on the habitual offender information. Defendant had been sentenced to five years on the original conspiracy to obtain money and property under false pretenses charge, and after his conviction on the habitual criminal information the term of the sentence was raised to ten years and the five-year sentence was revoked.

Under his first assignment of error defendant claims he was denied his constitutional right to a speedy trial. The state filed the information against defendant and six other individuals on June 5, 1973. Defendants were arrested on May 9, 1973, and made their initial appearance before a district county judge on May 11, 1973. Defendant herein was released on bail on May 14, 1973. A preliminary hearing was held before the district county judge on May 15 and 16, 1973. Defendant was bound over to circuit court and arraigned before Judge Thomas Parker at the Fall River County Courthouse on June 5, 1973.

From May 25, 1973, through June 10, 1973, there were motions and affidavits before the court to obtain release of some trucks which the state was attempting to hold as evidence. The trucks were eventually released to the defendants.

On September 24, 1973, defendant filed a demurrer challenging the information, a motion for severance, a motion for continued production of evidence, a bill of particulars and motion for separate jury trial. Briefs were submitted by some of the defendants, and reply briefs were submitted by the state.

Starting on February 26, 1975, the other defendants made motions demanding speedy trial and motions to dismiss under the two-term rule. Neither of these motions was made by defendant Krana, but the cases against all defendants were dismissed without prejudice by Judge Thomas Parker on December 15, 1975, under SDCL 23–34–2, the rule that any case that has been on the calendar for two terms and has not been tried must be dismissed.

On the following day, December 16, 1975, a complaint was again filed charging defendant and six others with the same offense. Defendant was not arrested until March 4, 1976, and he was again released on bail on March 11, 1976. A preliminary hearing was set for April 24, 1976, at which time defendant and his counsel appeared and waived the preliminary hearing. On May 10, 1976, defendant filed a motion demanding dismissal for failure to provide a speedy trial. This motion was denied by Circuit Judge Frank Henderson, to whom the trial had now been assigned. The trial was set for July 19, 1976. On July 15, 1976, defendant requested and was granted a

continuance because he was at that time being convicted of two offenses in federal court. The trial was then set for August 23, 1976, and commenced on that date.

On September 8, 1976, defendant moved for a change of venue on the habitual criminal information. This motion was granted on November 12, 1976. On November 1, 1976, the state moved to amend its information. This motion was also granted on November 12, 1976. The final trial commenced on December 9, 1976, and defendant was found guilty by a Beadle County jury on the habitual criminal information.

█ From the date of the first arrest, May 9, 1973, until the commencement of defendant's trial on August 23, 1976, there was a lapse of over 39 months. Accordingly, we will address first the question whether defendant was denied his constitutional right to a speedy trial. In *State v. Starnes,* 1972, 86 S.D. 636, 200 N.W.2d 244, this court applied the four-factor balancing test of *Barker v. Wingo,* 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. These four factors are: (1) length of delay, (2) reason for delay, (3) defendant's assertion of his rights, and (4) prejudice to defendant.

Applying the first test, we have already noted that a delay of over 39 months took place between defendant's arrest and trial. As the court pointed out in *State v. Black Feather,* 1976, S.D., 249 N.W.2d 261, where the delay was 33 months, certainly this delay is long enough to serve as a "triggering mechanism," requiring inquiry into other factors.

The second factor, reason for the delay, involves many issues. A myriad of motions were made by the defense requiring arguments, briefs and judicial decisions; the only cause which does not appear from the actual history of the case but which has been pointed out by the state is the fact that the case was originally commenced before Judge Parker, who was suffering from a heart condition and was incapacitated for long periods of time. Moreover, Judge Parker was then assigned extra administrative duties as Presiding Judge under the unified court system and was unable to provide an earlier date for the trial because of the extra load of duties placed on him. When the case was finally assigned to another judge it proceeded expeditiously. As stated by this court in *State v. Runge,* 1975, S.D., 233 N.W.2d 321, 323, "Admittedly, heavy court schedules and negligence are ultimately the responsibility of the government, but they should not weigh so heavily against the government as would a deliberate attempt to delay and hamper the accused's defense." In *United States v. Ewell,* 1966, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627, 630, the Court said:

> However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself.

In summary, then, nothing in the record shows any action on the part of the state to delay this trial. Many motions were made by defendant, all of which required answers by the prosecution and time for the court to consider. Only once was a continuance requested after the matter was set for trial, and that request was made by defendant.

The third factor cannot be weighed in defendant's favor. He never demanded a speedy trial. It is noteworthy that demands for speedy trial and motions to dismiss for failure to comply with the two-term rule were made by every defendant in the case except Krana. Copies of these motions were sent to defendant's attorney but defendant made no motion of any kind relating to speedy trial rights, which would lead us to believe he did not indeed wish a speedy trial. He was out on bail, having been in custody only a few days, and he had secured the return of the trucks for his use even though the state had tried to hold them as evidence. Defendant's own affairs, which included two convictions in federal court, caused him to request a continuance on one occasion after the trial had been set for an earlier date.

The fourth factor for consideration is whether the delay caused prejudice to defendant. The United States Supreme Court in *Moore v. Arizona,* 1973, 414 U.S. 25, 94 S.Ct. 188, 28 L.Ed.2d 183, held that it was error to require an affirmative demonstration of prejudice on the part of the defendant. In analyzing the record in the instant case in light of *Moore,* we find that defendant was not subjected to lengthy pretrial incarceration. He was at liberty and was carrying out his business as a trucker for all but a few days immediately following his arrest. Defendant did not live in the community where the crime occurred and was allowed to return to his home state of Iowa and to take the trucks which the state had hoped to retain for evidence and use those trucks to make his livelihood. He in fact had 39 months of freedom while awaiting trial that he would not otherwise have had in the face of his conviction and sentence when the trial was held. He was not living in the community where he had been charged and thus was not subject to the suspicions of his neighbors.

As pointed out by the United States Supreme Court in *Barker v. Wingo,* supra:

A second difference between the right to speedy trial and the accused's other constitutional rights is that deprivation of the right may work to the accused's advantage. Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which carries the burden of proof. 407 U.S. at 521, 92 S.Ct. at 2187, 33 L.Ed.2d at 111.

Defendant contends that a potentially material witness for his defense died prior to trial. This man was the owner of the trucks used in the scheme. However, he was never in the vicinity of the scene of the crime and had no involvement in the offense. No showing has been made that this deceased witness had testimony that was important to the case or what that testimony would have been. The mere allegation that a deceased person would have been a witness is not sufficient to show prejudice demanding a dismissal—there must be a showing of what the deceased witness knew and would have testified to.

Although it is argued that defendant's case was weakened by having the memories of witnesses fade, defendant did not in fact put on any witnesses, so there was no prejudice to him by having their memories fade. By contrast, a number of the state's witnesses had problems with fading memories, which weakened the state's case and worked to defendant's advantage. Since the state has more to prove it also has more to lose from a long delay. Defendant seems to have profited rather than suffered from a delay of this trial.

The court finds that in using the four-pronged test: (1) There was a delay of 39 months, which triggers the need to consider deprivation of right to speedy trial; (2) Reason for the delay was not caused by the prosecution, but came about from the many motions made by defendant and the illness and overwork of the judge assigned to try the case; (3) Defendant never requested a speedy trial; (4)It does not appear that any substantial prejudice resulted to defendant which would justify dismissal.

■ Defendant's second assignment of error is based on the following statement made by the trial judge at the end of the first day of trial:

Therefore, we are going to stand in recess until tomorrow morning, we will begin at 9:30 a. m., now, you are permitted, of course, to go home, but you are not to discuss this case with members of your family or anyone else for that matter. Just don't talk about it, if you do make some comments, this Judge would have to declare a mistrial and begin this case all over again, so please don't do anything like that and jeopardize the sanctity of one of these jury trials, because they are a sacred instrument of the law, and you must not talk to anybody about this case, and don't permit anybody to talk about the case in your presence  .   .   .   .

form no opinions in your mind. It's hard to do that, I know, but its rather axiomatic that you should hear two sides of the case before you make up your mind. It wouldn't be fair, would it, to listen to one side and not listen to the other fellow's side, and then make up your mind. *You've got to listen to the state's side and you've got to listen to the defendant's side and you shouldn't make up your minds before you hear both sides.* (emphasis added)

Defendant contends that his motion for mistrial should have been granted after the court advised the jury that they were required to listen to both sides. Defendant argues that this statement in effect suggested to the jury that defendant was under a duty to put on evidence or take the stand in his own behalf.

After denying the motion for mistrial the court gave an admonition to the jury stating that the burden of proof is always on the state of South Dakota and that it was not necessary for defendant to produce any evidence whatsoever of his innocence. Also, in the written instructions the court pointed out defendant's presumption of innocence and the fact that the burden of proof is on the state.

The statement by the court to the jury that they were to listen to both sides should not be considered detrimental to defendant even though he did not put on a defense. A defendant's attorney speaks in his behalf, and the court's statement only asked the jury to listen to everything said in defendant's behalf as well as the state's case. Even if the statement was initially interpreted in a different light by the jury, the court's admonition and instructions adequately remedied any conceivable harm. Cf. *State v. Schimkat,* 1972, 86 S.D. 523, 199 N.W.2d 37.

■ Defendant claims that it was error for the court to allow samples of the corn in the trucks into evidence because the corn was of such a poor quality it would tend to prejudice the members of the jury against defendant for providing a poor quality of corn, which was not the alleged crime being

tried. Defendant stated that he was willing to stipulate that the trucks carried corn and argued that it would therefore be unnecessary to allow the jurors to see the corn and that accordingly the prejudicial effect of this evidence would outweigh its probative value.

The delivery of the truckloads of corn was the basis of the crime alleged. The quality of the corn was not a consideration in the crime charged, a fact that was pointed out by the trial court when the evidence was introduced. Certainly the corn was part of the res gestae of the crime, and a stipulation offered by defendant to agree to state that the trucks contained corn would not have to be accepted by the state if that was not the way the state wished to present its case. As the court said in *State v. Nowlin,* Iowa, 1976, 244 N.W.2d 596, where the defendant wanted to stipulate to any fact that might be proven by the clothing worn by a murder victim rather than to have the gruesome appearing clothes offered in evidence: "A defendant cannot by such a concession control the exercise of the trial court's discretion in order to deprive the State of graphic proof of such facts." 244 N.W.2d at 600.

As stated in SDCL 15–6–43(a): "In any case, the statute or rule which favors the reception of evidence governs . . . ."

It was not error to allow introduction of evidence of the contents of the trucks.

■ Defendant contends that the trial court erred in refusing to grant his motion for directed verdict based upon the claimed insufficiency of evidence to sustain a finding of guilt beyond a reasonable doubt by a jury. Defendant, however, in no way pointed out to the trial court where the evidence was insufficient or set out any argument or reason for his claim. It was not error for the court to deny this motion as there was clearly a sufficient showing in the evidence to establish conspiracy as a matter of law and evidence to sustain a finding of guilt beyond a reasonable doubt by the jury.

■ In his fifth assignment of error defendant claims that under the habitual criminal act the record failed to affirmatively show that the prior convictions upon which the supplemental information was based would constitute felonies if committed in South Dakota.

At all times material herein SDCL 22–7–1 provided: [1]

A person who, after having been convicted within this state of a felony or an attempt to commit a felony, or under the laws of any other state, government, or country, of a crime which, if committed within this state, would be a felony, commits any felony within this state, is punishable upon conviction of such second offense as follows:

(1) If the subsequent felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then such person may be sentenced to imprisonment for a term not more than twice the longest term prescribed upon a first conviction;

(2) If a person has been three times convicted as hereinbefore provided and thereafter commits a felony within this state, such person may, in the discretion of the court, upon such fourth or any subsequent conviction of a felony, be sentenced to imprisonment in a state prison for the term of his natural life.

The state's amended supplemental information alleged the following prior felonies:

(1) Larceny by trick on July 6, 1962 in the Court of Common Pleas before Judge Straub in Lucas County, Ohio;

(2) Conspiracy on May 12, 1967 in the District Court, 2nd Judicial District in and for Greene County, Iowa, before Judge R. K. Brannan;

(3) False Pretense on September 20, 1960, in the Fifth Judicial Circuit Court in and for the County of Attala, Mississippi, before Judge Henry L. Rodgers;

(4) Obtaining Signature By False Pretense on July 6, 1962 in the Court of Common Pleas before Judge Straub in Lucas County, Ohio.

The rule to be applied in determining whether the actions would be felonies in South Dakota is stated in the California cases to be whether "the minimum elements of the crime committed are substantially similar to the minimum elements of the crime . . . in this state." *People v. Cameron,* 1967, 256 Cal.App. 135, 63 Cal. Rptr. 807, 809; *People v. Morton,* 1953, 41 Cal.2d 536, 261 P.2d 523.

Using this standard, the circuit judge properly dismissed the conspiracy conviction from the Second Judicial District in Iowa on the grounds that the degree of proof for conspiracy in South Dakota is higher than that degree of proof for conspiracy required in the state of Iowa.

The conviction for false pretense in Mississippi was based on a statute almost identical word for word with the statute in South Dakota. The court was furnished with a copy of the indictment, which contains the pertinent facts that were alleged and to which defendant pled guilty. The trial court found that there were sufficient facts showing that these acts would have constituted a felony had they been committed in South Dakota, and this court affirms that finding.

We will now take up the two Ohio convictions—larceny by trick and obtaining signature by false pretense, both convictions occurring on July 6, 1962.

In comparing the Ohio statute on larceny by trick with SDCL 22–41–4,[2] we find the statutes are substantially similar. How-

1. SDCL 22–7–1 through 22–7–5 were repealed by Ch. 158, § 7–9, Laws of 1976, made effective October 1, 1977, by Ch. 189, § 43–8, Laws of 1977. For a general discussion of the statute herein applied see *State v. O'Connor,* S.D., 265 N.W.2d 709.

2. SDCL 22–41–4, repealed effective October 1, 1977 (see SL 1977, Ch. 189, § 128), provided as follows:

Every person who designedly, by color or aid of any false token or writing, or other false pretense, obtains the signature of any person

ever, in the leading Ohio case interpreting the Ohio statute, *State v. Healy,* 1951, 156 Ohio St. 229, 102 N.E.2d 233, 241, the court at one point said: " 'Misrepresentation, as an element of larceny by fraud or trick, need not be a misrepresentation as to an existing or past matter and may consist of a future promise.' "

This court interpreted SDCL 22–41–4 in *State v. Wood,* 1957, 77 S.D. 120, 123, 86 N.W.2d 530, 532, saying: "The essential elements of the offense against which the statute [SDCL 22–41–4] is directed are a false representation of a material existing or past fact . . . ."

It is apparent, then, that although the statutes are worded very much alike, Ohio and South Dakota courts have given a different interpretation to their meanings. The same situation would also apply to the Ohio conviction for obtaining signature by false pretenses. If the false pretense conviction was based on a misrepresentation of a future fact it would be a felony under Ohio's interpretation in *State v. Healy,* supra, but would not be in South Dakota under *State v. Wood,* supra.

It is not possible from the facts provided to determine whether or not the Ohio convictions for larceny by trick and obtaining signature by false pretenses would in fact have been felonies had they been committed in the State of South Dakota. There is also insufficient evidence to determine whether these two July 6, 1962, offenses arose out of one transaction. If they did and it was in fact determined that they would have been felonies under South Dakota law, they could still have been considered only as a single prior offense.

We are not required, however, to decide these issues inasmuch as the Mississippi conviction on false pretenses was sufficient to invoke the habitual criminal statute. Under the conspiracy charge defendant could have been sentenced to five years in the penitentiary and $10,000 fine. The sentence of the Court was five years. Under the habitual criminal act a person convicted of a second felony could be sentenced to a term not more than twice the longest prescribed term upon a first conviction or in this case ten years, which is the exact sentence given by the judge. Following the rule set out by the Court in *State v. Provost,* S.D., 266 N.W.2d 96 (1978), where there was a solid previous conviction on third degree burglary and another one on escape from a county jail where the maximum punishment is either one year in county jail or two years in the penitentiary and the defendant had been given a jail sentence of less than one year, the Court stated:

It is undisputed that the sentence he received on the charge was less than one year in the county jail. Whether an offense is to be considered as a felony or a misdemeanor, where it is not specifically designated in the statute, and where the punishment can be in the penitentiary or by fine or jail sentence, the authorities are split. One rule being that the offense is to be considered a felony or a misdemeanor depending on the sentence imposed, and the other that the grade of the offense is determined by the maximum punishment authorized by statute. We are not required however to decide this issue, inasmuch as the burglary conviction was sufficient to invoke the habitual criminal statute. Under the grand larceny charge, the defendant could have been sentenced to a maximum of ten years. The sentence of the court was only seven years, whereas it could have been as much as twenty. We hold, therefore, that the defendant has made no showing of prejudice arising from the introduction in evidence of the escape conviction, even had it not been admissible as a felony. (footnotes omitted) 266 N.W.2d at 102.

Here, too, there was no showing of prejudice arising from the introduction in evidence of the other convictions, and any error committed by the circuit judge in

to any written instrument, or obtains from any person any money or property; or who so obtains the signature of, or money or property from any person for any alleged charitable or benevolent purpose, is punishable by imprisonment in the state penitentiary not exceeding three years or in a county jail not exceeding one year, or by a fine not exceeding three times the value of the money or property so obtained, or by both such fine and imprisonment.

allowing the two convictions to go to the jury was harmless.

There were several other assignments of error, which this court finds to be without merit. At the beginning of the trial the judge made an introductory statement, giving the jury a short explanation of the type of trial this would be and what would constitute their duty under the habitual criminal statute. Defendant objected to this statement as being a charge to the jury without having a settlement of instructions. We find that the statement of the court was strictly an introductory statement and not in the form of an instruction to the jury. The actual jury instructions were properly given at the close of the trial.

Defendant also objected to the admission into evidence of records that came from other states in regard to defendant's prior convictions because there were places in that evidence where references were made to charges other than those on which the habitual criminal charge was based.

The documents that came from the states of Ohio and Mississippi regarding the previous offenses were in packet forms, each containing official records of those courts. Some of those records included other charges that were not part of the specific charges alleged here. It would have been inappropriate for the state to have tampered with these documents so as to use only the parts that apply to these convictions; the introduction of the complete set of documents was necessary to explain the clerk's certificate authenticating the packet. At the time the records were introduced the court made an offer to defense counsel to give an instruction to the jury that they were to consider only the prior convictions alleged in the information, but this instruction was not requested by counsel. The jurors were clearly informed as to the three prior charges they were to consider. They were not called upon to determine defendant's guilt or innocence with respect to the prior convictions, an issue on which the extraneous charges might have had a preju-

dicial effect, but rather were to determine only if defendant was the same man that had been convicted on the three specific charges. The documents objected to by defendant are all public records made in the course of official duty. The trial court did not abuse its discretion in admitting these exhibits.

Defendant's supplemental brief raises the question that the prior convictions are too remote in time to be considered for the purpose of enhancing punishment. Defendant contends SDCL 23–8–3 sets a time limit of three years on the age of prior convictions. This is not a proper interpretation of the habitual offender statute, and SDCL 23–8–3 is not applicable thereto. In addition, this issue was not raised at the trial court level or by assignment of error.[3]

The conviction and sentence of the circuit court are affirmed.

All the Justices concur.

RAMYNKE, Circuit Judge, sitting for ZASTROW, J., disqualified.

---

3. We note that SDCL 27–7–9, effective October 1, 1977, provides criteria for the consideration of prior convictions.