Rodney WILLIAMS, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 780S205.

Supreme Court of Indiana.

April 16, 1981.

Christopher C. Zoeller, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Frederick N. Kopec, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of robbery, Ind.Code § 35–42–5–1 (Burns 1979), and sentenced to forty (40) years imprisonment. This direct appeal presents the following issues:

(1) Whether the trial court erred in not suppressing the victim's in-court testimony concerning her identification of the defendant at a pre-trial line-up.

(2) Whether the trial court erred in failing to give the defendant's tendered instruction on lesser included offenses.

(3) Whether the trial court erred in denying the defendant's motion to dismiss an habitual offender count of the information.

In the early morning hours of February 21, 1978, the victim walked from a supermarket to her automobile, which was parked near the entrance. She saw the defendant in the back seat. He explained that he had mistakenly entered the wrong car and left by the passenger door. She then entered her automobile and locked the passenger door, but before she could lock the driver's door, the defendant had forced his way into the vehicle. He took money and the car keys from her at gunpoint and attempted to drive the automobile. The vehicle became stuck on the ice and snow, however, and she and the defendant struggled, as she attempted to escape. He struck her in the head twice with his gun, and she suffered two concussions.

Another customer came out of the market, and, as he appeared, the defendant ran to a 1970 model Ford Thunderbird automobile parked nearby. He unsuccessfully attempted to enter it and then fled on foot. The keys to the Thunderbird were found inside the victim's car. When the defendant was subsequently arrested, pursuant to warrant, five days later, he was driving a 1970 model Ford Thunderbird.

\* \* \* \* \* \*

ISSUE I

Over the defendant's objection and suppression motion, the victim was permitted to testify about a pre-trial line-up.

On the day of the robbery, the police showed the victim thirty (30) photographs. She selected a picture of the defendant as depicting the perpetrator and was then told by a police officer present that she had selected Rodney Williams, and that he was the right person.

About two weeks later, the victim was shown an array of seven (7) photographs, which consisted of six (6) photographs from the previous array of thirty and a different photograph of the defendant. The victim again selected the defendant.

On March 20, 1978, the line-up was held in the presence of defense counsel, and the victim again selected the defendant.

■ The defendant first contends that the police provided the victim with knowledge that the defendant would be in the line-up prior thereto. However, the record shows that the victim had only assumed that the defendant would be in the line-up and that the purpose of the line-up was to make a positive identification. *United States v. Person*, (1973) 155 U.S.App.D.C. 455, 457, 457 F.2d 659, 661.

The defendant next argues that the second array was overly suggestive, because the front of the defendant's photograph bore the name "Williams." Each of the seven photographs bore a name—"Williams"; "White"; "Winters"; "Ronnie Williams"; "Woods"; "Williams"; and "Williams, Jr." We are inclined to believe that the victim's knowledge of the perpetrator's name, Rodney Williams, would effectively reduce the aforementioned array of photographs from seven (7) to three (3).[1] However, the issue before us is whether or not this array tainted the subsequent line-up.

The record shows that the defendant made no objections at trial to the victim's testimony about her identifications of the defendant based upon either photographic array. Even if the trial court had excluded the victim's testimony about the line-up, the jury heard her testimony about the two other pre-trial identifications in which she positively identified the defendant as the perpetrator. It also heard the testimony of the customer who had followed the defendant after the incident. He testified that he had identified the defendant from a photographic array of six (6) to eight (8) pictures.

■ Under these circumstances, the victim's testimony about the pre-trial line-up was merely cumulative of other properly admitted evidence of probative value relating to the perpetrator's identity,[2] and error in its admission, if any was harmless. *Cody v. State*, (1973) 259 Ind. 570, 579–80, 290 N.E.2d 38, 44, *cert. denied*, (1974) 416 U.S. 960, 94 S.Ct. 1978, 40 L.Ed.2d 311.

## ISSUE II

The defendant was convicted of Robbery, a Class A Felony. He contends that the trial court erred in not giving his tendered instruction on the lesser included offenses of Robbery, as a Class B Felony; Robbery as a Class C Felony; and Theft.

1. If the victim had viewed only three photographs as part of a second array, that alone would not be a firm basis for a claim that the array was unnecessarily suggestive. *Porter v. State*, (1979) Ind., 397 N.E.2d 269, 271.

2. See e.gs., *Walton v. State*, (1980) Ind., 398 N.E.2d 667, 670 (Admission of heroin over objection is harmless error where Defendant made no objection to testimony of officer who recovered the heroin and chemist who identified the substance recovered as heroin); *Bobbitt v. State*, (1977) 266 Ind. 164, 174, 361 N.E.2d 1193, 1199 (No error in admission of photographs of automobile where Defendant made no objection to testimony regarding the automobile); *Jenkins v. State*, (1975) 263 Ind. 589, 592–93, 335 N.E.2d 215, 217 (Admission of a drawing prepared in part on the basis of hearsay is harmless error where testimony of the evidence depicted in the drawing is admitted without objection); *Chatman v. State*, (1975) 263 Ind. 531, 547–48, 334 N.E.2d 673, 683 (Hearsay testimony of physician as to cause of death is not reversible error where it is merely cumulative of other competent and unrefuted evidence of the cause of death); *Koonce v. State*, (1975) 263 Ind. 5, 7, 323 N.E.2d 219, 220, (Defendant's claim that admissions were obtained without advice of Miranda rights not considered where other witnesses related the substance of the admissions); *Sexton v. State*, (1974) 262 Ind. 554, 559–60, 319 N.E.2d 829, 832 (Admission of Defendant's inculpatory statements is harmless error, where evidence of the statements went to the jury without objection through testimony of other witnesses); *Boles v. State*, (1973) 259 Ind. 661, 663–64, 291 N.E.2d 357, 360 (Admission of photocopy of lease over "best evidence" objection is harmless error where other evidence indicating ownership and possession of property is admitted without objection).

Defendant points out that the only evidence which indicates the use of a gun and the infliction of bodily injury came from the victim, and that it was not corroborated. The defendant offered no evidence at trial.

The uncorroborated testimony of the victim is sufficient to sustain a robbery conviction. *Geisleman v. State,* (1980) Ind., 410 N.E.2d 1293, 1295. Since the defendant presented no evidence to contradict the victim, the only issue before the jury was the identity of the perpetrator, and it was not error to refuse an instruction on lesser included offenses. *Fleener v. State,* (1980) Ind., 412 N.E.2d 778, 782, (cases cited therein).

### ISSUE III

The defendant was charged with being an habitual offender. Ind.Code § 35–50–2–8 (Burns 1979), but that charge was dismissed on the State's motion, after the verdict on the robbery charge was returned. It is his contention that his motion at trial to dismiss the habitual offender charge should have been granted, because the sole purpose of the charge was to discourage him from taking the stand. The defendant has a long criminal record and would probably have been impeached thereby, had he testified. He further argues that, had he been impeached, he would have provided the State with the evidence to convict him on the habitual offender charge. Thus, he claims, he was faced with the dilemma of acquitting himself upon the robbery charge and convicting himself on the habitual offender charge.

Assuming that the prosecutor's motive was as the defendant charges, we, nevertheless, perceive no error. The prosecutor's role is adversarial, and we will not review his strategy except to prevent the denial of due process of law. The filing of habitual offender charges to induce plea bargaining has been held to be a proper exercise of prosecutorial discretion. *Bordenkircher v. Hayes,* (1978) 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604; *Howard v. State,* (1978) 268 Ind. 589, 591, 377 N.E.2d 628, 629–30, *cert. denied,* (1978) 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 708.

Any defendant with a prior criminal record, who elects to take the stand in his own defense, runs the risk that his credibility will be adversely affected by impeachment through use of his prior convictions. *Gilmore v. State,* (1981) Ind., 415 N.E.2d 70, 73; *Jameison v. State,* (1978) 268 Ind. 599, 603, 377 N.E.2d 404, 406–07.

We have often stated that the status of habitual offender is not an "offense" but rather a justification for an enhanced penalty on the charge(s) for which the defendant has been tried and convicted. Examined in this light, the dilemma of which the defendant complains, is a phantom. If the defendant chooses to testify, and the jury acquits him there is no habitual offender phase of the proceedings. If he is convicted, the prosecutor bears the same burden of proving the defendant's habitual offender status as if the defendant had not testified and had not been impeached by his criminal record. There is no merit to the defendant's contention.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER and PIVARNIK, JJ., concur.

DeBRULER, J., concurs in result.