STATE of South Dakota, Plaintiff
and Appellee,

v.

Jesse E. STUCK, Defendant
and Appellant.

No. 15837.

Supreme Court of South Dakota.

Argued March 24, 1988.

Decided Dec. 14, 1988.

Robert Mayer, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Rodney Freeman, Jr., of Churchill, Manolis, Freeman & Kludt, Huron, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

Defendant Jesse E. Stuck (Stuck) was charged with attempted murder, aggravated assault, and being a habitual offender after a stabbing incident on January 12, 1987. A Beadle County jury pronounced Stuck guilty of aggravated assault, after which a second jury trial was held on the habitual offender charge. The second jury returned a verdict of guilty, and the trial court sentenced Stuck to life imprisonment. Stuck appeals these convictions, alleging twelve trial court errors:

1) The trial court erred in remarking that the sole issue to be considered in the habitual offender proceeding was whether Stuck was the same person convicted of prior felonies;

2) The State was allowed to amend the habitual offender information to his prejudice;

3) The trial court mishandled a prior conviction from the State of Washington;

4) Admission of testimony regarding Stuck's prior convictions at the criminal proceeding and habitual offender proceeding violated his Fifth Amendment rights against self-incrimination;

5) Stuck's request for appointment of a fingerprint expert was improperly denied;

6) Probable cause for Stuck's warrantless arrest and the complaint was lacking;

7) The trial court failed to set reasonable bond and denied Stuck's request for an investigator, compromising his ability to prepare his defense;

8) Stuck was denied access to a witness' statement at the preliminary hearing;

9) The victim's in-court identification of Stuck was inadmissible;

10) Stuck was denied access to the victim's medical records;

11) The prosecution was allowed to present improper rebuttal testimony; and

12) Jury instructions concerning admissions were erroneously submitted to the jury.

After a careful review of the record, we find no prejudicial error and affirm Stuck's convictions.

## FACTS

On December 18, 1986, Stuck was released from the State Penitentiary. His step-brother's girl friend, Theresa Cashin, picked him up in Sioux Falls and took him to her apartment in Huron, where she temporarily permitted him to live.

Three weeks later, on January 12, 1987, Stuck and a friend, Tom Casavan, arrived at the apartment of Larry Anderson seeking money to buy beer. Anderson was acquainted with Casavan, but did not know Stuck. After drinking a beer, Anderson drove Casavan and Stuck to a liquor store, where they purchased a twelve-pack of beer. They proceeded to Cashin's apartment, where others, including Earl Jensen, a friend of Stuck, joined the party. After purchase and consumption of two more twelve-packs of beer, the party again ran out of beer and money. At that point, Anderson drove Stuck, Casavan, and Jensen to the residence of E. Clarke White, a

man with whom Anderson once had a homosexual relationship. Casavan and Jensen remained in Anderson's car. Anderson and Stuck went to White's door, and were admitted by White. They remained in White's home for approximately five minutes, during which White was engaged in long-distance telephone conversations.

As to what happened next, the accounts of those present differed radically. White and Anderson maintained that Anderson, after a brief talk with White, started toward the door to leave, and Stuck attacked White with a knife from behind. Stuck testified that White quarreled with Anderson out of jealousy over Anderson's "flaunting" Stuck, and that it was Anderson who stabbed White. After the stabbing, Stuck and Anderson hurriedly left, and White, bleeding profusely from a knife wound in the throat, sought help by telephone.

Police soon arrived at White's home, and he informed them that a stranger in Anderson's company had knifed him. The police ascertained Stuck's identity by information acquired from Anderson and the State Penitentiary. Stuck· was arrested several hours later, early in the morning of January 13, 1987, at Cashin's apartment, after he shaved off his beard, disposed of the jeans he had worn at White's home, and acquired a police radio scanner.

## DECISION

### I. ADVISING THE JURY THAT THE SOLE ISSUE TO BE DETERMINED AT THE HABITUAL OFFENDER PROCEEDING WAS WHETHER STUCK WAS THE SAME PERSON WHO HAD BEEN CONVICTED OF PREVIOUS FELONIES

At the start of Stuck's habitual offender proceeding, in introductory remarks to the jury, the trial court commented as follows:

The defendant has entered a plea of not guilty to this Information and therefore puts in issue the question of whether or not the defendant is the same person that is described in the alleged Judgment of Convictions and the decision that

you people are going to have to make or whoever is sitting on the jury, is whether or not this defendant is in fact the same person that has been convicted of prior felonies, as the State of South Dakota has alleged.

Stuck claims that the trial court's remarks were prejudicial error because Stuck also disputed whether a Washington conviction would have been a felony under South Dakota law. Stuck relies on SDCL 22–7–7, which provides, in pertinent part, that "determination of whether a prior offense is a felony for purposes of this chapter shall be determined by whether it is a felony under the laws of this state or under the laws of the United States at the time of conviction of such prior offense." Stuck also asserts that the trial court was in error for instructing the jury when it did. We disagree with both contentions.

■ It is clear from the record that the trial court's remarks were not jury instructions but general introductory statements. Stuck's assertion that the trial court's comments constituted improper jury instructions is therefore without merit. *See State v. Krana*, 272 N.W.2d 75, 82 (S.D.1978).

■ As to the substance of the remarks, we note the following language from *State v. Moves Camp*, 376 N.W.2d 567, 570 (S.D. 1985):

The sole issue in habitual offender cases is whether the defendant "is the same person as alleged in the habitual criminal information[,]" i.e., whether the defendant is the same person who was convicted of committing prior felonies. SDCL 22–7–12.

*See also State v. Garritsen*, 421 N.W.2d 499 (S.D.1988). The trial court's remarks, by telling the jury that identity was the sole issue they faced, were substantively correct. The question of whether a foreign offense would be a felony if committed within this state is "a question of legislative categorization; it is not a question of fact for the jury, but a matter of law predetermined by the legislature and applied by the judiciary." *Griffin v. State*, 275 Ind. 107, 118, 415 N.E.2d 60, 66 (1981). *See also People v. Sullivan*, 113 Cal.

App.2d 510, 248 P.2d 520 (1952); *State v. Thornton*, 24 Wash.App. 881, 604 P.2d 1004 (1979). The applicability of the Washington conviction was a question for the court, not the jury. Stuck demonstrated no error, and no prejudice to his defense, on this issue.

## II. AMENDMENT OF THE HABITUAL OFFENDER INFORMATION

■ During the habitual offender proceeding, at the close of the State's presentation of evidence, Stuck made a motion for a directed verdict of acquittal based on a three-day discrepancy of dates on the habitual offender information (conviction on May 16, 1982) and the Washington Judgment of Conviction (conviction entered on May 19, 1982). The trial court allowed the State to amend the information. Stuck now argues that a different offense was thereby added to the information, the jury was left to speculate as to when the Washington conviction took place, and a presumption could have arisen that there were two convictions in May 1982, not one. We affirm the trial court on this issue.

■ SDCL 23A–6–19 permits amendment of an information during trial "at any time before a verdict or finding is made, if no additional or different offense is charged and substantial rights of the defendant are not thereby prejudiced." Stuck addressed the Washington conviction in his testimony at both trials. He was not misled or unable to formulate a defense. Correction of typographical errors regarding dates at habitual offender proceedings is, at worst, harmless error, absent a showing of prejudice. *Starks v. State*, 517 N.E.2d 46 (Ind.1987) ("December 19, 1979" changed to "December 19, 1975"). On this record, where the jury was provided with the corrected information and Stuck was identified by both fingerprint evidence and his own testimony at both trials, we find no prejudice under SDCL 23A–6–19.

## III. THE WASHINGTON CONVICTION

■ Stuck next challenges the use of his Washington conviction for second-degree theft to enhance his sentence. He alleges that the court never took notice of the statutes under which he was convicted, and did not determine whether the Washington crime would have been a felony in South Dakota. This claim is largely based on the assertion that there was insufficient proof that the photocopied statutes provided by the state were in effect at the time of conviction.

Examining the record, we affirm the trial court on this issue. The court compared the photocopied Washington statutes and the relevant court documents to the corresponding South Dakota statutes and concluded that their minimal elements were substantially similar, under the rule of *State v. Clothier*, 391 N.W.2d 197 (S.D. 1986). In *Clothier*, this Court rejected sentence enhancement using an Oklahoma conviction because the equivalent South Dakota law had a narrower "intent" requirement. *Id.* at 198–99. This problem does not arise here because the Washington statute is narrower than the South Dakota statute. The Washington information specified that Stuck was charged with feloniously and wrongfully obtaining property, exceeding $250 in value, belonging to one Thomas Kraushaar, with intent to deprive the owner of his property. This language is consistent with our statutory definition of grand theft (indeed, the Washington statute is more restrictive, the opposite of the situation in *Clothier*):

> SDCL 22–30A–1. *Theft defined.* Any person who takes, or exercises control over, property of another with intent to deprive him of it, is guilty of theft.
>
> SDCL 22–30A–17. *Grand theft and petty theft distinguished—Degrees of petty theft.* Theft is grand theft, if:
>
> (1) The value of the property stolen exceeds two hundred dollars;
>
> \*    \*    \*    \*    \*    \*
>
> Theft in all other cases is petty theft. Grand theft is a Class 4 felony....

The facts alleged in the Washington information which Stuck admitted by pleading guilty, with assistance of counsel, match the requirements of South Dakota law. Also, Stuck's Washington sentence was for up to five years, in the state cor-

rection center, which corresponds to our statutory definition of a felony as a crime which is or may be punished by imprisonment in the State Penitentiary (SDCL 22–1–4). There were sufficient facts for the court to find that the Washington crime would have constituted a felony in South Dakota, even without reference to the statutes. *See State v. Krana*, 272 N.W.2d 75, 80 (S.D.1978). For the same reason, Stuck's argument that the trial court prejudicially failed to take judicial notice of the Washington statute cannot succeed, as the Washington court documents, when compared to our statutes, established that Stuck's crime in Washington was a felony in both states. Stuck's related argument, that the actual value of the property stolen was an issue, is without merit, as he concedes that it is not necessary to retry prior convictions.

## IV. ADMISSION OF EVIDENCE OF PRIOR CONVICTIONS

Before trial, Stuck presented a motion to suppress evidence of his criminal record. The trial court denied this motion as such evidence is admissible to impeach a witness under SDCL 19–14–12 where the trial court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the accused. The trial court expressly held that on this record, the probative value of Stuck's convictions exceeded their prejudicial value, and restricted the State to using the "unspecified felony" approach derived from *State v. Waller*, 338 N.W.2d 288 (S.D.1983), and *State v. Dickson*, 329 N.W.2d 630 (S.D.1983). On the day of Stuck's criminal trial, the prosecutor asked the court's permission to put Stuck's Penitentiary record into evidence during the State's case-in-chief, as Stuck's trial

strategy of blaming Anderson, revealed at that time, made it clear that Stuck would take the stand in his own defense. Defense counsel interjected that same would be unnecessary, as he was going to refer to it during voir dire. During the State's case-in-chief, witnesses made two references to Stuck having been in the Penitentiary. The first was volunteered by a witness without prompting from the prosecutor on direct examination, and the second was elicited by defense counsel on cross-examination. Neither reference provided any information as to the crimes for which Stuck was incarcerated, nor to the sentence Stuck was serving. When Stuck, himself, testified, the first testimony he presented on direct examination was a lengthy account of his prior felony convictions. Stuck's testimony was later admitted into evidence at his habitual offender trial.

■ Stuck now claims that the trial court erred in allowing the State to introduce testimony regarding his prior convictions at his criminal trial because such testimony concerned prior bad acts. This position is untenable as such evidence is admissible if the conditions of SDCL 19–14–12[1] are met. *See*, for example, *State v. Shult*, 380 N.W.2d 352 (S.D.1986); *State v. King*, 346 N.W.2d 750 (S.D.1984); *State v. Hoff*, 324 N.W.2d 820 (S.D.1982). The three felony convictions fit SDCL 19–14–12(1), in that they were punishable by imprisonment in excess of one year, and the court balanced their probative value against their prejudicial effect. These are not prior bad acts in the context of SDCL 19–12–5.[2] In addition, examination of this record does not indicate that any evidence of his convictions was introduced during

---

1. SDCL 19–14–12 provides:

For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party or the accused and the crime
(1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or
(2) involved dishonesty or false statement, regardless of the punishment.

2. SDCL 19–12–5 provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

the State's case-in-chief other than the two passing references mentioned above, to which Stuck did not object. These provided no more information than Stuck gave the jury during voir dire. The predominant share of testimony was presented by Stuck himself, without prompting from the State. Given this record, we find no error regarding the criminal proceeding. The initial decision to allow impeachment by prior convictions is within the trial court's sound discretion. *State v. Cross*, 390 N.W.2d 564 (S.D.1986). No abuse is evident.

■ Had the record shown that the trial court acceded to the State's request to impeach Stuck before he testified, reversal might have been warranted because evidence relating to the credibility of the accused may not be offered in evidence in advance of the accused's appearance on the stand, since the effect of such an attack would be to compel the accused to take the stand. *See generally* 81 Am.Jur.2d *Witnesses* § 523, at 528 (1976); IIIA *Wigmore on Evidence*, § 874 n. 1 (Chadborn rev. 1970). We do not regard the isolated, unobjected-to references to Stuck's having been in the Penitentiary to be attacks on his credibility sufficient to merit reversal.

■ The admission of Stuck's criminal trial testimony at his habitual offender trial was also correct. While SDCL 19–14–11 provides that prior testimony regarding credibility given by a witness or accused does not waive the privilege against self-incrimination, Stuck's testimony at the criminal trial came before any attack was mounted against his credibility.

■ There is no indication that Stuck was compelled to utter his account of his prior convictions at his criminal trial. No violation of his privilege against self-incrimination under either the Fifth Amendment or Article VI, § 9, of the South Dakota Constitution appears. His statements were voluntary. As Stuck was not yet impeached, his testimony did not serve to bolster his credibility. As in *State v. Dace*, 333 N.W.2d 812, 815 (S.D.1983), Stuck's testimony was not related only to preliminary matters or credibility. Stuck's allegation that he was forced to testify to explain

away his prior convictions is not supported by the record. He took the stand to present his defense that Anderson stabbed White. No evidence other than Stuck's own testimony suggested that possibility. Once he did so, his prior convictions were available, subject to the limitations of SDCL 19–14–12, to impeach his credibility. Any defendant who takes the stand in his own defense runs the risk of such impeachment. *Williams v. State*, 275 Ind. 603, 608, 419 N.E.2d 134, 137 (1981). The use of voluntary criminal trial testimony, regarding prior convictions at habitual offender proceedings, does not violate the privilege against self-incrimination because there is no compulsion. *Land v. State*, 470 N.E.2d 697, 700 (Ind.1984); *Gillie v. State*, 465 N.E.2d 1380, 1387 (Ind.1984); *State v. Alexander*, 10 Wash.App. 942, 521 P.2d 57 (1974). In *Land*, 470 N.E.2d at 700, transcripts of the defendant's prior testimony were admitted in his habitual criminal proceeding. Once a person waives his right not to testify against himself, his privilege as to the use of that testimony is ordinarily waived. *People v. Carlson*, 677 P.2d 390, 392 (Colo.App.1983). We affirm the trial court on this issue.

## V. FINGERPRINT EXPERT

■ Stuck asserts that the trial court's denial of his requests for appointment of a fingerprint expert for the habitual offender proceedings denied him the ability to effectively cross-examine or rebut the State's fingerprint evidence linking him to all three prior convictions.

Appointment of outside experts is at the discretion of the court. SDCL 19–15–9; *State v. Archambeau*, 333 N.W.2d 807, 811 (S.D.1983). Where an indigent defendant, clearly the case here, requests appointment of an expert at county expense, there are four requirements that must be met: (1) The request must be in good faith; (2) the request must be reasonable in all respects; (3) the request must be timely and specifically set forth the necessity of the expert; and (4) the request must specify that defendant is financially unable to obtain the required service himself and that such ser-

vices would otherwise be justifiably obtained were defendant financially able. *State v. Muetze*, 368 N.W.2d 575, 583 (S.D. 1985); *State v. Sahlie*, 90 S.D. 682, 690, 245 N.W.2d 476, 480 (1976). The key question here is the request's necessity. Trial courts should scrutinize a defense request for an expert to insure that an indigent defendant may procure any reasonable defense, and, when in doubt, lean toward the appointment of such an expert. *State v. Hallman*, 391 N.W.2d 191, 195 (S.D.1986).

Stuck's motion indicated that the State would use fingerprint evidence to identify him, and that an expert was "necessary for the Defendant to have a fingerprint expert of his own examine the conclusions and results to be testified by the State's fingerprint expert." However, Stuck set forth no facts indicating that another expert would reach any different conclusion than the one reached. The State expert was interpreting full sets of fingerprints, taken in controlled conditions. The likelihood of error was remote. If a request for a fingerprint expert is vague or imprecise, there is no denial of due process. *Caldwell v. Mississippi*, 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231, 236 n. 1 (1985). A vague request does not establish the right to a court-appointed expert. *Hallman*, 391 N.W.2d at 194. As Stuck did not establish his need for a fingerprint expert, we cannot find an abuse of discretion in this record.

## VI. PROBABLE CAUSE

Stuck next argues that his arrest was illegal, in that he was arrested without a warrant, the complaint lacked indicia of probable cause, and no showing of probable cause was made at his preliminary hearing. He maintains that he, therefore, should have been released by the magistrate at his preliminary hearing. Again, we disagree.

The record indicates that Stuck was arrested on January 13, 1987. The arresting officer was informed by another officer, at the scene of the stabbing, that the victim identified the assailant as an unfamiliar man, with blond hair and a distinctive tattoo on his arm, who was in the company of Larry Anderson at the time. The arresting officer learned from Anderson that the assailant's name was Jesse, and that he had recently been released from the State Penitentiary. The officer ascertained from the Penitentiary that a man named Jesse Stuck (Defendant) fit the description given and was released on December 18, 1986. Anderson then confirmed that Stuck was the assailant, and related that he was probably at the Tamarac Apartments. The officer proceeded to the apartments and arrested Stuck, after Stuck identified himself.

Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a belief by a man of reasonable caution that a crime has been or is being committed. *State v. Klingler*, 84 S.D. 466, 469–70, 173 N.W.2d 275, 278 (1969). The constitutionality of an arrest is dependent on probable cause. *Klingler*, 84 S.D. at 469, 173 N.W.2d at 277. In *State v. Max*, 263 N.W.2d 685 (S.D.1978), a warrantless intrusion leading to an arrest was justified on less information than the officer had in this case. This Court, in *Max*, listed several factors that are particularly relevant to finding that exigent circumstances exist to arrest without a warrant, including: (1) A grave offense, especially a crime of violence; (2) a suspect reasonably believed to be armed; (3) probable cause, based on reasonably trustworthy information, to believe the suspect committed the crime; and (4) strong reason to believe suspect is in the premises. *Max*, 263 N.W.2d at 687. Here, police had information from Anderson, the victim, and the Penitentiary which pointed unequivocally to Stuck. The crime was violent. Stuck could reasonably be expected to have a knife, and police knew his probable location. He had been in town only a few weeks. The arrest itself was legal. *See State v. Moves Camp*, 286 N.W.2d 333 (S.D.1979).

Stuck is correct, however, in pointing out that the complaint produced by the State at his initial hearing was defective in

that there was no supporting affidavit showing probable cause. The complaint simply indicated the allegations were based on "investigation," and the committing magistrate did not make a determination regarding probable cause. SDCL 23A–4–1 requires complaints in warrantless arrest cases to comply with SDCL 23A–2–2, which mandates a showing of probable cause. These statutory violations are, however, insufficient to void his conviction, as illegal detention, alone, does not void a subsequent conviction. *State v. Runge*, 89 S.D. 376, 384, 233 N.W.2d 321, 325 (1975). *See also Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952). Here, the arrest itself was legal, and probable cause was determined at his preliminary hearing.

## VII. REASONABLE BOND/REFUSAL TO APPOINT INVESTIGATOR

The trial court set $100,000 bond, and refused Stuck's request for an investigator to assist in preparation of his defense. Stuck argues he had an absolute right to bail, the judge imposed an unreasonably high bond without stating the factors used in reaching his decision, and the judge, if Stuck was held, should have appointed an investigator.

■ Regarding bail, the State had submitted Captain Rand's affidavit and police report as evidence. This indicated Stuck was recently released from the Penitentiary, the crime was violent, and the unprovoked nature of the incident. The high bail was not an abuse of discretion, given the facts. Danger to the community (demonstrated here) is a factor to be considered. *State v. Christians*, 381 N.W.2d 214, 217 (S.D.1986). On this record, Stuck's assertion he was punished for failing to testify against himself at the hearing is unjustified.

■ As to the investigator, the trial court noted that defense counsel was provided with transcripts from the Anderson,

Casavan, and Jensen trials. Defense counsel had cross-examined the victim. This was not a complex case. The trial court's decision that denial of an investigator would not prejudice Stuck was not unreasonable. Courts are not particularly receptive to post-conviction claims by defendants that they are entitled to relief because pretrial incarceration in some way interfered with preparation of their defense. W. LaFave & J. Israel, *Criminal Procedure*, § 12.2(c) (1985). Where a specific claim is made, as, for example, that there were many potential witnesses a defendant knew by sight but not by name, the result might be different. LaFave & Israel, *supra* (citing *Kinney v. Lenon*, 425 F.2d 209 (9th Cir.1970) (school-yard fight)).

As with Stuck's request for a fingerprint expert, no need for an investigator's assistance was established, and the request failed to satisfy the "reasonableness" prong of the *Sahlie* test. *See State v. Archambeau*, 333 N.W.2d 807, 811 (S.D. 1983); *State v. Sahlie*, 90 S.D. 682, 690, 245 N.W.2d 476, 480 (1976). The trial court did not abuse its discretion.

## VIII. DENIAL OF ACCESS TO A STATEMENT USED TO REFRESH RECOLLECTION

Stuck was denied access to a statement given by Larry Anderson which was used by an officer to refresh his memory during Stuck's preliminary hearing. Stuck alleges that this deprived him of the ability to cross-examine the witness. The trial court ruled that the document was not used to refresh the officer's memory.

■ The record indicates that no prejudice to Stuck resulted. The officer had independent knowledge of another of Anderson's statements, and defense counsel elicited from the witness the discrepancies between Anderson's statements. While the trial court erred in holding that the statement was not used to refresh the officer's memory, as the officer admitted he was using it for that purpose, and violated SDCL 19–14–21 [3] in denying Stuck ac-

---

**3.** SDCL 19–14–21 provides that an adverse party is entitled to have writings or objects, used to refresh memory during testimony, produced at the trial, hearing, or deposition in which the witness is testifying.

cess to it, we find no prejudice to Stuck's defense. Defense counsel received this statement prior to trial and was permitted extensive cross-examination. Even in the context of the preliminary hearing, Stuck's non-access to this statement was harmless.

## IX. IN–COURT IDENTIFICATION

█ At his preliminary hearing, Stuck was identified by White as his assailant. Stuck challenges this in-court identification on the grounds that White had insufficient opportunity to observe him during the incident and could have misidentified him.

This argument is without merit. *State v. Phinney,* 348 N.W.2d 466 (S.D.1984), sets out five factors to be considered regarding the admissibility of identification testimony:

(1) Length of time between crime and confrontation;

(2) Opportunity of the witness to observe the accused at the time in question;

(3) Level of certainty exhibited;

(4) Witness' degree of attention; and

(5) Accuracy of prior description.

*Phinney,* 348 N.W.2d at 470.

Stuck emphasizes that two weeks elapsed between the incident and identification, the short time Stuck was at the scene (five minutes), White's not actually seeing his assailant at the moment of impact (as the assailant was behind him), White's being distracted by the telephone and being blind in one eye, and discrepancies in White's description given to police (regarding which, we note, White was barely conscious, through loss of blood, when he spoke to the police).

As White observed Stuck over a period of five minutes, had two full frontal views of his face, lasting several seconds each, and testified that he noticed Stuck's eyes because Stuck gave him a strange look, this identification was permissible. *See People v. Jenkins,* 133 A.D.2d 279, 519 N.Y.S.2d 68 (1987) (robbery case; victims saw defendant over five to eight minute period, at close range for a few seconds). Here, where White watched Stuck in his own living room, uncomfortable with having a stranger there, there is no question as to admissibility.

## X. DENIAL OF ACCESS TO WHITE'S MEDICAL RECORDS

The court denied Stuck's request for discovery of White's medical records, holding those records privileged under SDCL 19–13–7, which provides:

A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

This privilege has exceptions, including SDCL 19–2–3, which provides:

In any action or proceeding or quasi-judicial administrative proceeding, *whenever the physical or mental health of any person is in issue,* any privilege under § 19–13–7 shall conclusively be deemed to be waived at trial or for the purpose of discovery under chapter 15–6 if such action or proceeding is civil in nature; *and such privilege shall also conclusively be deemed to be waived at trial or for any purpose provided by chapter 23A–12 or 23A–13 if such action or proceeding is criminal in nature.* (Emphasis added.)

(Regarding this section, we note that SDCL ch. 23A–12 concerns depositions, and SDCL ch. 23A–13 concerns discovery.) Further, SDCL 19–13–26 provides:

A person upon whom this chapter confers a privilege against disclosure waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This section does not apply if the disclosure itself is privileged.

White's medical records were turned over to the State, which Stuck argues is a waiver of privilege under SDCL 19–13–26. Stuck also asserts that White's physical health or well-being was at issue, waiving the privilege under SDCL 19–2–3, to which State replies that no waiver occurred as the State was an entity allied in interest with White.

SDCL 23A–13–4 gives criminal defendants the right to inspect medical reports and records in the possession of the prosecutor which are material to preparation of the defense. If the angle, width, and depth were material to the defense, the court erred in preventing discovery, as SDCL ch. 23A–13 provisions trigger waiver under SDCL 19–2–3.

▉ In the particular circumstances of this case, White's medical records were not material to Stuck's defense as the facts of the knife wound and its position were not at issue. *See State v. Devine,* 372 N.W.2d 132, 134 (S.D.1985). Also, the particular knife used to inflict the wound was not conclusively identified at trial. Release of the medical records would have provided Stuck with no material information that he did not already possess. Also, Stuck never requested a waiver of the physician/patient privilege from White, which indicates that White's medical records were not essential from Stuck's own perspective.

As the medical records were not material to Stuck's defense, SDCL §§ 19–2–3 and 23A–13–4 do not apply in this case. Although the trial court erred in ruling that the records were protected by physician/patient privilege under SDCL 19–13–7, because the privilege was waived, under SDCL 19–13–26, Stuck was not denied any material information, and his defense was not prejudiced in any manner. White's physical/mental health was not at issue under SDCL 19–2–3.

## XI. REBUTTAL TESTIMONY

▉ During White's testimony, he related that he retreated to the basement door, but did not go down the steps. The State then showed the jury video tapes of the crimes scene, showing blood splattered part way down the stairway. Later, Stuck related a radically different version of the facts, but did not mention the basement steps. The court then allowed White to testify in rebuttal, at which time he explained that the blood on the steps was caused by his coughing of blood at the top of the stairs.

Stuck urges that this was prejudicial error. We disagree. The State offered the evidence to prove that if White was stabbed where Stuck claimed, there would be blood near that location. The degree to which blood was splattered was allowable to rebut Stuck's new version of the facts. SDCL 23A–24–2(4).

The trial court has wide discretion in permitting the State to introduce additional evidence after it has closed its case. *State v. Hickey,* 287 N.W.2d 502, 506 (S.D.1980). We find no abuse of that discretion here.

## XII. JURY INSTRUCTIONS REGARDING ADMISSIONS

▉ Stuck's final argument is that a purported statement of his directed at the victim was not an admission; therefore, jury instructions on admissions were improper. The statement, as related by White, was: "I'll tell you what I'm going to do, I'm going to cut you." As Stuck denied making the statement, he maintains that it was inadmissible hearsay. However, SDCL 19–16–3(1) provides that a party's own statement offered against him is not hearsay. Stuck also argues that his statement was not an acknowledgement of a fact, and therefore does not fit Black's Dictionary's definition of admission. *See* Black's Law Dictionary 24 (abridged 5th ed. 1983). We disagree. Black's states that "[a]n admission is not limited to words, but may also include the demeanor, conduct and acts of the person charged with a crime." *Supra.* Further, a criminal admission is "avowal of a fact or of circumstances from which guilt may be inferred...." *Supra.* Admissions are "the words or acts of a party-opponent, or of his predecessor or representative, offered as evidence against him." *McCormick on Evidence,* § 262, at 774 (3d ed. 1984). Clearly, the statement was an ad-

mission, and, as such, admissible. As Stuck cites no authority for the proposition that denial of a statement removes it from the definition of admission, we do not consider that argument. The trial court properly instructed the jury.

Affirmed in all respects.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

SABERS, J., concurs in result.

SABERS, Justice (concurring in result).

I concur except on Issue X, where I concur in result only. The trial court improperly denied Stuck's request for discovery of White's medical records as they related to White's knife wounds. The angle, width, and depth were material to Stuck's defense that Anderson, not Stuck, stabbed White straight away in the throat. However, in view of all the evidence to the contrary, I would hold the error to be harmless. SDCL 23A–44–14; *State v. Michalek*, 407 N.W.2d 815 (S.D.1987); *State v. Waller*, 338 N.W.2d 288 (S.D.1983).