#25586-a-GAS

**2011 S.D. 46**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

  v.

KENNETH DALE STARK,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE LAWRENCE E. LONG
Judge

* * * *

MARTY J. JACKLEY
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.

MATTHEW L. OLSON
Minnehaha County Public
  Defender's Office
Sioux Falls, South Dakota                    Attorneys for defendant
                                        and appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 16, 2011

OPINION FILED **08/10/11**

#25586

SEVERSON, Justice

[¶1.] Kenneth Dale Stark appeals his conviction on two counts of loitering in a community safety zone in violation of SDCL 22-24B-24. Stark appeals, raising four issues: (1) that the South Dakota statutes prohibiting sex offenders from loitering in a community safety zone are unconstitutional; (2) that the trial court erred by allowing the State to amend the Part II Information to include the correct location of his prior felony conviction; (3) that there was insufficient evidence to establish that his primary purpose for remaining in the community safety zone was to observe or contact minors; and (4) that the trial court abused its discretion by admitting evidence that an individual in a white mini-van registered to him was seen in a community safety zone the day before the charged conduct occurred. We affirm on all issues.

## Background

[¶2.] In the afternoon and evening of April 22, 2009, a Sioux Falls mother noticed an individual in a white mini-van "watching or following . . . children going to swimming lessons" in the area of the School for the Deaf and Terry Redlin Elementary School. She noted the vehicle's license plate number and reported this activity to law enforcement. When law enforcement checked the license plate number, they found that the vehicle was registered to Stark, a registered sex offender. South Dakota law prohibits registered sex offenders from loitering within 500 feet of any school, public park, public playground, or public school. SDCL 22-24B-24.

[¶3.] Officers Jason Holbeck and Cullen McClure were assigned to observe Stark the following evening. Stark left his place of employment near Fourth Avenue and Benson Road at approximately 6:10 p.m. He briefly stopped at a gas station at the corner of Benson Road and Cliff Avenue and then proceeded south on Cliff Avenue. At Third Street, Stark made a right turn and drove toward Whittier Park, which lies between Third and Fourth Streets and Cliff and Indiana Avenues. Officers Holbeck and McClure followed Stark as he drove around Whittier Park on Third Street, Indiana Avenue, and Fourth Street. Numerous children were present in the area at the time. After watching Stark circle the park for approximately twenty minutes, the officers lost contact with him. They looked for him for several minutes but eventually left the Whittier Park area.

[¶4.] While on break, the officers received a call from police dispatch that Stark was in the vicinity of Meldrum Park. The officers immediately left the McKennan Hospital cafeteria and arrived in the Meldrum Park area approximately ten minutes later. The officers saw Stark's van leaving the curb on Fifth Street. It appeared he had been parked at the northeast corner of the park. The officers followed Stark and eventually stopped the van.

[¶5.] When Officer McClure interviewed Stark, he smelled alcohol. The officers searched Stark's vehicle and found an open bottle of vodka under the driver's seat. Officer McClure cited Stark for driving under the influence, open container in a motor vehicle, and failure to maintain financial responsibility. A Minnehaha County grand jury later indicted Stark on two counts of loitering in a community safety zone, one count of driving under the influence, and one count of

open container in a motor vehicle. The State also filed a Part II Information. Stark pleaded not guilty to all charges.[1]

[¶6.]     The case proceeded to trial in October 2009. At trial, Stark's version of events was quite different from that of Officers Holbeck and McClure. Stark testified that he left work at approximately 6:30 p.m. on April 23, 2009. After purchasing gas and a bottle of vodka at a gas station at the corner of Benson Road and Cliff Avenue, Stark testified that he proceeded south on Cliff Avenue, eventually making a right turn in the area of Whittier Park. He was headed to The Banquet, which serves free meals to those in need. When he arrived at The Banquet, he discovered it had stopped serving. He proceeded to his home at the Rushmore Motel at the intersection of East Tenth Street and Interstate 229. Stark testified that he took a shower, had a few drinks, and left for Franklin Foods Market at approximately 7:45 p.m. On the way, he pulled over briefly on Fifth Street to let an oncoming car through a particularly narrow part of the street and to allow a group of children to cross. Shortly thereafter, he was stopped and arrested.

[¶7.]     At the close of the State's case and at the close of all the evidence, Stark moved for a judgment of acquittal. He argued that the South Dakota statutes prohibiting sex offenders from loitering in community safety zones are unconstitutional and that the State did not present sufficient evidence to establish that his primary purpose for remaining in a community safety zone was to observe or contact minors. The trial court denied Stark's motions. The jury returned a

---

1.    The State later dismissed the failure to maintain financial responsibility charge.

verdict of guilty on two counts of loitering in a community safety zone and one count of open container in a motor vehicle. Stark appeals.

## Analysis and Decision

[¶8.] **1. Whether the South Dakota statutes prohibiting sex offenders from loitering in community safety zones are unconstitutional.**

[¶9.] Stark argues that the South Dakota statutes prohibiting sex offenders from loitering in community safety zones are unconstitutional. SDCL 22-24B-24 provides that "[n]o person who is required to register as a sex offender . . . may loiter within a community safety zone[.]" SDCL 22-24B-22 defines the key terms of SDCL 22-24B-24. "Loitering" is defined as "remain[ing] for a period of time and under circumstances that a reasonable person would determine is for the primary purpose of observing or contacting minors[.]" SDCL 22-24B-22. A "community safety zone" is "the area that lies within five hundred feet from the facilities and grounds of any school, public park, public playground, or public pool, including the facilities and grounds itself[.]" *Id.*

[¶10.] Challenges to the constitutionality of a statute are reviewed de novo. *State v. Martin*, 2003 S.D. 153, ¶ 13, 674 N.W.2d 291, 296 (quoting *State v. Allison*, 2000 S.D. 21, ¶ 5, 607 N.W.2d 1, 2). This Court recognizes a strong presumption of constitutionality. *Id.* "To be invalidated a statute must be proved a breach of legislative power beyond a reasonable doubt." *Id.* "Only when the unconstitutionality of a statute is plainly and unmistakably shown will we declare it repugnant to our [C]onstitution." *Id.* And "[i]f a statute can be construed so as not to violate the [C]onstitution, that construction must be adopted." *Id.* "Our

function is not to decide if a legislative act is unwise, unsound, or unnecessary, but rather, to decide only whether it is unconstitutional." *Id.*

*Overbreadth*

[¶11.] Stark first argues that the South Dakota statutes prohibiting sex offenders from loitering in community safety zones are facially unconstitutional. Normally, an individual does not have standing to facially challenge a statute unless he was engaged in constitutionally-protected expression. *State v. Asmussen*, 2003 S.D. 102, ¶ 3, 668 N.W.2d 725, 729. But the overbreadth doctrine provides an exception to this rule. *Id.* "[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *City of Chicago v. Morales*, 527 U.S. 41, 52, 119 S. Ct. 1849, 1857, 144 L. Ed. 2d 67 (1999) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612-15, 93 S. Ct. 2908, 2916-17, 37 L. Ed. 2d 830 (1973)). The overbreadth doctrine allows a court to consider a statute's effect on third parties, regardless of its effect on the individual challenging the statute. *Asmussen*, 2003 S.D. 102, ¶ 3, 668 N.W.2d at 729. Courts created this "expansive remedy out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech[.]" *Id.* (quoting *Virginia v. Hicks*, 539 U.S. 113, 118-19, 123 S. Ct. 2191, 2196, 156 L. Ed. 2d 148, 157 (2003)).

[¶12.] What Stark has framed as an overbreadth challenge is not an overbreadth challenge at all. He does not argue that the South Dakota statutes prohibiting sex offenders from loitering in community safety zones substantially

infringe on the constitutionally-protected expression of third parties. Rather, he argues that the statutes unconstitutionally violated his freedom to loiter for innocent purposes. He contends that the United States Supreme Court recognized this right in *Morales*. We disagree. Only three members of the *Morales* Court acknowledged the constitutional right to loiter for innocent purposes. *See Morales*, 527 U.S. at 53, 119 S. Ct. at 1858. And even so, that plurality invalidated the Chicago loitering ordinance at issue because it was too vague, not because it infringed the right to loiter. *Id.* at 55, 119 S. Ct. at 1858. We therefore reject Stark's argument that the statutes at issue violated his "right to loiter," and conclude that he has not properly placed the issue of facial overbreadth before this Court.

*Vagueness*

[¶13.]     Stark also argues that the South Dakota statutes prohibiting sex offenders from loitering in community safety zones are unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment. "Vagueness may invalidate a criminal law for either of two independent reasons." *Id.* at 56, 119 S. Ct. at 1859. "First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits[.]" *Id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 1858, 75 L. Ed. 2d 903 (1983)).

> A crime must be statutorily defined with definiteness and certainty. A statute [that] either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. A criminal statute must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden.

*Asmussen*, 2003 S.D. 102, ¶ 10, 668 N.W.2d at 731 (quoting *State v. Big Head*, 363 N.W.2d 556, 559 (S.D. 1985)). Second, a statute may be unconstitutionally vague if it authorizes or even encourages "arbitrary and discriminatory enforcement." *Morales*, 527 U.S. at 56, 119 S. Ct. at 1859. A criminal law must not permit policemen, prosecutors, and juries to conduct a standardless sweep to pursue their personal predilections. *Kolender*, 461 U.S. at 358, 103 S. Ct. at 1858 (quoting *Smith v. Goguen*, 415 U.S. 566, 575, 94 S. Ct. 1242, 1248, 39 L. Ed. 2d 605 (1974)). Indeed, the most important aspect of the vagueness doctrine is "the requirement that a legislature establish minimal guidelines to govern law enforcement." *Id.* (citing *Smith*, 415 U.S. at 574, 94 S. Ct. at 1247-48). In sum, the language of statutes needs to be fair and reasonably certain. *State v. McGill*, 536 N.W.2d 89, 95 (S.D. 1995) (citing *State v. Hoffman*, 430 N.W.2d 910, 912 (S.D. 1988)).

[¶14.] In *Morales*, the Court considered whether vagueness rendered a Chicago loitering ordinance unconstitutional. The ordinance at issue provided:

> Whenever a police officer observes a person whom he reasonably believes to be a criminal street gang member loitering in any public place with one or more other persons, he shall order all such persons to disperse and remove themselves from the area. Any person who does not promptly obey such an order is in violation of this section.

The ordinance further defined loitering as "remain[ing] in any one place with no apparent purpose." In deciding that the ordinance failed to establish minimal guidelines to govern law enforcement, the Court found it particularly important that the ordinance contained no intent or purpose requirement:

> [The] limitation would no doubt be sufficient if the ordinance only applied to loitering that had an apparently harmful purpose or effect, or possibly if it only applied to loitering by

> persons reasonably believed to be criminal gang members. But this ordinance . . . requires no harmful purpose and applies to nongang members as well as suspected gang members. It applies to everyone in the city who may remain in one place with one suspected gang member as long as their purpose is not apparent to an officer observing them. Friends, relatives, teachers, counselors, or even total strangers might unwittingly engage in forbidden loitering if they happen to engage in idle conversation with a gang member.

*Morales*, 527 U.S. at 62-63, 119 S. Ct. at 1862. The Court ultimately held that the Chicago loitering ordinance was unconstitutional because it did not "provide sufficiently specific limits on the enforcement discretion of the police[.]" *Id.* at 64, 119 S. Ct. at 1863.

[¶15.]     Many courts emphasize the importance of a law's ability to distinguish between innocent and harmful conduct. A number of state courts have upheld ordinances that criminalize loitering if they require evidence of some overt act or criminal element. *See id.* at 57 n.25, 119 S. Ct. at 1859 n.25 (citing *Tacoma v. Luvene*, 827 P.2d 1374 (1992) (upholding an ordinance criminalizing loitering with the purpose to engage in drug-related activities); *People v. Superior Court*, 758 P.2d 1046, 1052 (1988) (upholding an ordinance criminalizing loitering for the purpose of engaging in or soliciting lewd acts)). *See also United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29, 35, 83 S. Ct. 594, 599, 9 L. Ed. 2d 561 (1963) (holding that a provision of the Robinson-Patman Act making it a crime to sell goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor was not unconstitutionally vague); *Screws v. United States*, 325 U.S. 91, 102, 65 S. Ct. 1031, 1036, 89 L. Ed. 1495 (1945) (A requirement of intent served to "relieve the statute of the objection that it punishes without warning an offense of

which the accused was unaware."). Courts have also almost uniformly invalidated laws that do not join the term "loitering" with a second more specific element of the crime. *Morales*, 527 U.S. at 58 n.26, 119 S. Ct. 1860 n.26 (citing *State v. Richard*, 836 P.2d 622, 623, n.2 (1992) (striking down a statute that made it unlawful "for any person to loiter or prowl upon the property of another without lawful business with the owner or occupant thereof")).

[¶16.]     The South Dakota statutes at issue in this case are very different from the Chicago loitering ordinance in *Morales*, and, as applied to Stark, they are not unconstitutionally vague. First, SDCL 22-24B-24 only applies to persons required to register as sex offenders in South Dakota, a meticulously defined class of individuals. *Compare Morales*, 527 U.S. at 62-63, 119 S. Ct. at 1862. Second, by defining the term "community safety zone," SDCL 22-24B-22 describes the precise area to which SDCL 22-24B-24 applies. The statute does not use amorphous terms like "neighborhood" or "locality," which are "elastic and dependent upon the circumstances." *See Connally v. Gen. Constr. Co.*, 269 U.S. 385, 395, 46 S. Ct. 126, 129, 70 L. Ed. 322 (1926) (finding that vagueness in a criminal statute was exacerbated by use of the terms "neighborhood" and "locality"). Finally, and perhaps most importantly, SDCL 22-24B-24 distinguishes between innocent and harmful conduct. By requiring that the loitering be "for the primary purpose of observing or contacting minors," the South Dakota Legislature limited the statute's application to loitering that has an "apparently harmful purpose or effect." *Compare Morales*, 527 U.S. at 62-63, 119 S. Ct. at 1862. The statutes at issue were sufficient to provide Stark with notice that his conduct was prohibited, and they did

not authorize the law enforcement officers in this case to act in an arbitrary or discriminatory manner. Stark has therefore failed to meet his burden of establishing that the statutes, as applied to him, are unconstitutionally vague.

[¶17.] **2. Whether the trial court erred by allowing the State to amend the Part II Information to include the correct location of Stark's prior felony conviction.**

[¶18.] Stark argues that the trial court erred by allowing the State to amend the Part II Information to include the correct location of his prior felony conviction. A court trial was held in November 2009 on the Part II Information, which alleged that Stark was convicted of failure to register as a sex offender in Minnehaha County, South Dakota, in August 2007. At trial, the State offered a judgment of conviction from a failure to register conviction in Hennepin County, Minnesota. Stark objected to the exhibit on the grounds of relevance, and the trial court informed the State that its proof was at variance with the pleadings. The State then moved to amend the Part II Information to correct what it described as a "clerical error." Stark objected, citing SDCL 22-7-11, which requires that the information "state the times, places, and specific crimes alleged to be prior convictions." The trial court allowed the amendment.

[¶19.] This Court considered this precise issue in *State v. Stuck*, 434 N.W.2d 43, 48 (S.D. 1988). In that case, Stuck moved for a directed verdict of acquittal during a habitual offender trial due to a discrepancy of dates in the information. The trial court allowed the State to amend the information. Stuck appealed, arguing that the amendment added a new charge to the information. On appeal, this Court rejected Stuck's argument, citing SDCL 23A-6-19, which permits the

amendment of an information during trial "at any time before a verdict or finding is made, if no additional or different offense is charged and substantial rights of the defendant are not thereby prejudiced." *Id.* We noted that the "[c]orrection of typographical errors regarding dates at habitual offender proceedings is, at worst, harmless error, absent a showing of prejudice." *Id.* (citing *Starks v. State*, 517 N.E.2d 46 (Ind. 1987)). Although the issue in *Stuck* was whether to permit an amendment of dates rather than location, that distinction is insignificant. *Stuck* controls the disposition of this issue, and we therefore conclude that the trial court did not err by allowing the State to amend the Part II Information to include the correct location of Stark's prior felony conviction.

[¶20.]      **3.**      **Whether there was sufficient evidence to establish that Stark's primary purpose for remaining in the community safety zones was to observe or contact minors.**

[¶21.]      Stark argues that the State did not meet its burden of proving beyond a reasonable doubt that his primary purpose for remaining in the community safety zones was to observe or contact minors. "In measuring the sufficiency of the evidence, we ask 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d 80, 83 (quoting *State v. Klaudt*, 2009 S.D. 71, ¶ 14, 772 N.W.2d 117, 122). "We accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict." *Id.* (quoting *State v. Jensen*, 2007 S.D. 76, ¶ 7, 737 N.W.2d 285, 288). "Moreover, the jury is the exclusive judge of the credibility of the witnesses and the weight of the evidence." *Id.* (citation omitted). "This Court will

not resolve conflicts in the evidence, assess the credibility of witnesses, or evaluate the weight of the evidence." *Id.* (citation omitted).

[¶22.] The question of Stark's purpose for remaining in the community safety zones was within the exclusive province of the jury. Intent and purpose are rarely susceptible to direct proof, and the fact finder must make these determinations by drawing reasonable inferences from the words and acts of the defendant and the circumstances surrounding the incident. *People ex rel. C.C.H.*, 2002 S.D. 113, ¶ 10 n.4., 651 N.W.2d 702, 705 n.4 (quoting *State v. Holzer*, 2000 S.D. 75, ¶ 16, 611 N.W.2d 647, 651-52). Officers Holbeck and McClure testified that they observed Stark circle Whittier Park for approximately twenty minutes. When they arrived at Meldrum Park, he was parked near the northeast corner of the park. Although Stark testified at trial that his primary purpose was not to observe or contact minors, the jury resolved this basic credibility dispute against him. Having reviewed the record, we conclude that the State presented sufficient evidence that Stark's primary purpose for remaining in the community safety zones was to observe or contact minors.

[¶23.] **4. Whether the trial court abused its discretion by admitting evidence that an individual in a white mini-van registered to Stark was seen in a community safety zone the day before the charged conduct occurred.**

[¶24.] Finally, Stark argues that the trial court abused its discretion by admitting evidence that an individual in a white mini-van registered to Stark was seen "watching or following . . . children going to swimming lessons" in the area of the School for the Deaf and Terry Redlin Elementary School on April 22, 2009. Although the trial court allowed the evidence only to explain why Officers Holbeck

and McClure were following Stark, he contends that the purpose of the evidence was to demonstrate that he had a propensity to commit the charged offenses.

[¶25.] SDCL 19-12-5 (Federal Rule 404(b)) allows for the admission of "other acts" evidence when it is relevant for some purpose other than proving character. This Court has established a two-part test to be used in applying this rule. "First, the offered evidence must be relevant to a material issue in the case. Second, the trial court must determine 'whether the probative value of the evidence is substantially outweighed by its prejudicial effect.'" *State v. Wright*, 2009 S.D. 51, ¶ 55, 768 N.W.2d 512, 531 (quoting *State v. Owen*, 2007 S.D. 21, ¶ 14, 729 N.W.2d 356, 362-63). "The res gestae rule is a well-recognized exception to Rule 404(b)." *State v. Goodroad*, 1997 S.D. 46, ¶10, 563 N.W.2d 126, 130 (citing *State v. Floody*, 481 N.W.2d 242, 253 (S.D. 1992)). "The res gestae exception permits the admission of evidence that is 'so blended or connected' in that it 'explains the circumstances; or tends logically to prove any element of the crime charged.'" *Wright*, 2009 S.D. 51, ¶ 55, 768 N.W.2d at 531 (quoting *Owen*, 2007 S.D. 21, ¶ 15, 729 N.W.2d at 363).

[¶26.] The evidence at issue clearly falls within the res gestae rule. The tip about the suspicious individual in the white van was the reason that law enforcement officers were watching Stark on the date of the offense. It was necessary for the jurors to hear this information in order to give them some context about the case and to explain why Stark was being followed. Because the evidence helped to "explain the circumstances" of the case, it was admissible under the res gestae rule. Stark argues that the evidence was used to prove an uncharged crime that allegedly took place the day before the charged offense. Even assuming this is

#25586

true, this Court has held that "[e]vidence, when a part of the res gestae, is proper if it is related to and tends to prove the crime charged although it also proves or tends to prove the defendant guilty of another crime." *Id.* (citing *Goodroad*, 1997 S.D. 46, ¶ 10, 563 N.W.2d at 130). Because this evidence is part of the res gestae, the trial court did not abuse its discretion by admitting it.

[¶27.]     Affirmed.

[¶28.]     GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and MEIERHENRY, Retired Justice, concur.